# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: April 11, 2019

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | UNPUBLISHED |
| STEPHEN SCHMIDT,            * | |
|                             * | No. 16-342V |
|            Petitioner,      * | |
| v.                          * | Special Master Gowen |
|                             * | |
| SECRETARY OF HEALTH         * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES,         * | Respondent's Objections to |
|                             * | Reasonable Basis. |
|            Respondent.      * | |
| * * * * * * * * * * * * * * * * * * | |

Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for petitioner.
Debra A. Filteau Begley, United States Department of Justice, Washington, DC for respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS**[1]

Now ripe for adjudication is Stephen Schmidt ("petitioner")'s application for attorneys' fees and costs following dismissal of her petition in the National Vaccine Injury Compensation Program.[2] Petitioner's ("Pet.") Application ("App.") for Attorneys' Fees (ECF No. 47). On March 16, 2016, Petitioner filed a claim for compensation, alleging he developed "shoulder injuries" as the result of receiving an influenza vaccine administered on October 6, 2016. Petition at Preamble and ¶¶ 2 &4 (ECF No.1). The court dismissed the claim for failure to prosecute and failure to respond to Court orders on December 19, 2018. Decision Dismissing Petition (ECF No. 54). The application requests $20,159.20 in attorneys' fees and $1,052.43 in costs incurred, for a total of $21,211.63. Pet. App. at 2. On February 13, 2019, respondent filed a response to petitioner's application for attorneys' fees and costs. Respondent's ("Resp.") Response (ECF No. 57).

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this decision contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the Ruling will be available to anyone with access to the Internet.** Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id*. **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** *Id*.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

Respondent opposes petitioner's motion for attorneys' fees and costs, asserting that petitioner did not have a reasonable basis for his claim.  Resp. Response at 1.  Petitioner filed a Reply to Respondent's Opposition to Petitioner's Motion on February 19, 2019.  Pet. Reply (ECF No. 58). As detailed below, I find the petition was filed with reasonable basis and good faith.[3]

### I.   Procedural History

Counsel filed the petition and a substantial number of medical records on March 16, 2016 on behalf of the petitioner. (ECF No. 1).  The same day, counsel filed a statement of completion. (ECF No.2).  The case was initially assigned to the Special Processing Unit ("SPU") based on the allegations raised in the petition.  Initial Order (ECF No. 6).  On August 22, 2016, respondent filed a status report requesting petitioner file additional medical records.  Resp. Status Report (ECF No. 13).  Petitioner complied with the request and filed additional medical records on October 6, 2016 and November 17, 2016. Notice of Filing (ECF No. 15) & Notice of Filing (ECF No. 18). Respondent filed a status report on January 4, 2017 indicating that he was prepared to defend against the claim but needed additional medical records from petitioner related to petitioner's diabetes treatment.  Resp. Status Report (ECF No. 20).  Once again, petitioner complied and filed additional medical evidence on February 8, 2017.  Notice of Filing (ECF No. 22).

On March 27, 2017, respondent filed his Rule 4(c) report opposing settlement and requested to move forward with litigation.  Resp. Report (ECF No. 24).  The report again asked petitioner to file additional medical evidence related to a motor vehicle accident.  Resp. Report at 2-3.  Chief Special Master Dorsey gave petitioner until May 30, 2017 to file additional medical records and an affidavit describing the date and circumstances of the motor vehicle accident. Scheduling Order (ECF No. 17).  Petitioner filed the requested affidavit on July 31, 2017 and a status report indicating the referenced motor vehicle accident occurred 25 years ago.  *See* Pet. Status Report (ECF No. 29).

The case was transferred from the SPU to the undersigned on August 3, 2017.  ECF No. 31.  After the case was transferred to me, I held a status conference on September 19, 2017 and issued a subsequent scheduling order requesting petitioner file any outstanding medical records and insurance billing records and to submit a status report indicating how he wished to proceed. Scheduling Order (ECF No. 32).  Petitioner filed additional medical records on January 3, 2018. Notice of Filing (ECF No. 36).  Another status conference was held on April 11, 2018, where respondent agreed to review all the updated medical records and file a status report providing an updated position on the case.  Scheduling Order (ECF No. 45).  Respondent's position did not change and he maintained his litigative posture.  Resp. Status Report (ECF No. 47).

On August 14, 2018, I held another status conference with the parties' counsel and informed petitioner's counsel that it would likely be difficult to separate petitioner's prior shoulder pain from any that came from the vaccination in order to determine what part of his pain could be attributed to the vaccination.   Scheduling Order (ECF No. 48). I ordered petitioner's counsel to file either a status report indicating a reason to justify continuing with petitioner's claim or a motion to dismiss the claim within thirty (30) days.  *Id.*

---

[3] Respondent did not raise a "good faith" challenge, therefore, this decision focuses on reasonable basis.

At the conclusion of thirty (30) days, petitioner's counsel filed a status report indicating that he had been unable to contact petitioner, despite several phone calls, emails and letters. Pet. Status Report (ECF No. 49). After granting an extension of time for petitioner's counsel to contact and discuss the case with petitioner, counsel filed a status report on October 18, 2018 indicating that he was still unable to contact petitioner and requested a status conference to discuss next steps. Pet. Status Report (ECF No. 51). I issued an Order to Show Cause on November 27, 2018, giving petitioner twenty (20) days to respond or his case would be dismissed for failure to prosecute. Order (ECF No. 52). Petitioner did not respond and thus, petitioner's case was dismissed on December 19, 2018 for failure to prosecute. Dismissal Decision (ECF No. 53).

## II. Legal Standard for Awarding Attorneys' Fees

Section 15(e) of the Vaccine Act governs attorneys' fees. 42 U.S.C. § 300aa-15(e). Even when a petition does not result in compensation, a special master "may" award reasonable attorneys' fees and costs "if the special master determines that the petition was brought in good faith and there was a reasonable basis for which the petition was brought." § 300aa-15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress "intended to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

"Reasonable basis" and "good faith" are two distinct requirements. *Simmons v. Sec'y of Health and Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). The presence of reasonable basis is an objective consideration determined by the totality of the circumstances. *Scalon v. Sec'y of Health & Human Servs.,* 116 Fed.Cl. 629, 633 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 297, 303 (2011). The totality encompasses any jurisdictional questions, the factual basis and medical support for the petition, any legal issues that arise, and the circumstances under which the petition was filed. *Scalon* at 633-634. A petitioner must furnish some evidence in support of the claim. *Bekiaris v. Sec'y of Health & Human Servs.*, 104 Fed. Cl. 108, *115 (Fed. Cl. Spec. Mstr. Sept. 25, 2018). Counsel must perform at a minimum, a simple review of available medical records to satisfy the attorneys that the claim is feasible. *Silva v. Sec'y of Health & Human Servs.,* 108 Fed.Cl. 401, 405 (2012). This does not require counsel to resolve all legal and factual issues at the time of filing a petition, but reasonable basis analysis should not discount the need for evidentiary support for a claim. *Johnsen v. Sec'y of Health & Human Servs.,* No. 15-1219. WL 2018 1833424 at *6 (citing *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632 (Fed. Cir. 2017).

The petitioner's burden to establish a reasonable basis is lower than the preponderance of the evidence standard the plaintiff must establish to recover on the merits of the claim, but a petitioner "must furnish some evidence in support" of the claim "to establish the statutory requirement of reasonable basis." *Curran v. Sec'y of Health & Human Servs.,* 130 Fed.Cl. 1, 5 (Fed. Cir. 2017) (citing *Chuisano* at 288). However, even if reasonable basis exists at the time the petition is filed, it "may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 288 (2014); *see also Perriera v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (affirming the special master's finding that reasonable basis existed until the evidentiary hearing); *Hamrick*, 2007 WL 4793152, at * 4 (observing that "[p]etitioner's counsel must review periodically the evidence supporting petitioner's claim").

3

### III.   Petitioner's Claim Had Sufficient Reasonable Basis for Fees Award

Upon review, I find that there was reasonable basis to file the petition. The petition seeks compensation for a Shoulder Injury Related to Vaccine Administration ("SIRVA") injury. The petition was filed on March 16, 2016, before SIRVA was added to the Vaccine Table.[4] Petitioner alleged that he developed "shoulder injuries" as a result of receiving an influenza vaccine administered on October 6, 2014. Petition (ECF No. 1). The petition states the petitioner was "healthy, with no history of shoulder injuries." Petition ¶ 2. While the medical records indicate petitioner had some underlying health issues prior to the vaccination, he never expressed seriously limiting pain in his shoulders. *See* Pet. Ex. 4 at 33 (noting total body [pain] involving every joint in the body); *see also* Pet. Ex. 4 at 43 (observing petitioner had pain in left shoulder above 90-degree abduction); and Pet. Ex. 9 at 26 (stating petitioner had resistance to range of motion in several joints).

It was not until after petitioner received the vaccine when he expressed more serious functional limitations in his left shoulder. Pet. Ex. 9 at 24. Dr. Johnson first diagnosed petitioner with "frozen shoulder" on November 24, 2014. *Id.* at 25. Petitioner began physical therapy in the beginning of December 2014, with the diagnosis of "left shoulder adhesive capsulitis. Pet. Ex. 9 at 40. In January 2015, Dr. Johnson opined petitioner had "potential" adhesive capsulitis and administered a Kenalog injection. *Id.* at 24. In May 2015, petitioner sought treatment by Dr. Kuesis, an orthopedist, who recommended an MRI. Pet. Ex. 11 at 16. Petitioner reported that the pain [in his shoulder] had been present for about six months; his left arm is significantly weaker than the right; and onset was about six months ago. *Id.* It appears that Dr. Kuesis' partner, Dr. Gregory Drake, took over petitioner's treatment after an MRI confirmed a partial thickness tear within the supraspinatus tendon. *Id.* at 18-19. On June 2, 2015, Dr. Drake diagnosed petitioner with tendinitis/bursitis-shoulder and associated petitioner's shoulder pain with adhesive capsulitis. *Id.* at 19. The same day, Dr. Drake wrote a letter to petitioner's endocrinologist outlining the proposed treatment of two cortisone injections, stating "Mr. Schmidt has adhesive capsulitis of the left shoulder secondary to his diabetes." *Id.* at 4.

On June 22, 2015, petitioner sought treatment from another orthopedist, Dr. Obermeyer. Pet. Ex. 6 at 40. Petitioner told Dr. Obermeyer that his left shoulder pain began after the flu vaccine in October 2014. *Id.* The physical exam showed petitioner had reduced range of motion in his left shoulder. *Id.* at 41. Dr. Obermeyer diagnosed petitioner with adhesive capsulitis with a probable association with poor glucose tolerance with A1C of 11. *Id.* at 43. Dr. Obermeyer recommended six weeks of physical therapy. *Id.* In July 2015, petitioner was treated by Dr. Obermeyer who observed that petitioner's diabetes was better controlled with A1C at 5 but maintained the diagnosis of adhesive capsulitis of the shoulder until early 2016. *Id.* at 24. An MRI from June 22, 2015 revealed "a partial thickness bursal sided supraspinatus effect with a small AA spur and tight inferior capsule." *Id.* at 12. At a visit on January 22, 2016, Dr. Obermeyer opined to petitioner that there a component of diabetic frozen shoulder with more profound stiffness. *Id.* at 13.

---

[4] The final rule amending the Table was published on January 19, 2017. It governs claims filed on or after March 21, 2017. 82 Fed. Reg. 6294 (Jan. 19, 2017) (codified at 42 C.F.R. § 100.3).

Respondent argues that petitioner's counsel failed to adequately inspect the medical records prior to filing, which clearly establish an alternative cause for petitioner's shoulder injury. Respondent states that on March 16, 2015, petitioner's internist, Dr. Leverentz, observed that petitioner could not lift his left arm above 90 degrees "which is the same degree of limitation that Dr. Leverentz noted prior to the vaccination." Resp. Response at 2. However, counsel mischaracterizes the treatment notes of Dr. Leverentz. In September 2014, Dr. Leverentz observes petitioner has *pain* above 90-degree abduction. Pet. Ex. 4 at 43. Then on March 16, 2015, Dr. Leverentz states, "Painful arc from…above 90-degree abduction and really doesn't move it higher than that now and now all movement is painful…" *Id.* at 54. The treatment note Dr. Leverentz provided in March 2015 is far more detailed than the one from September 2014 and included a description of petitioner's functional limitation. The treatment note from September 2014 only stated that petitioner experienced pain while moving his shoulder. *Id.* at 43. Further, other treatment records describe petitioner's continuously decreasing range of motion in his left shoulder. *See* Pet. Ex. 9 at 24 ("restrictions to range of motion in multiple planes"); *Id.* at 27 ("generalized resistance to range of motion"); Pet. Ex. 11 at 15 ("Left Shoulder Examination: Range of Motion: severe limitation with active and passive ROM"); and *Id.* at 17 ("left shoulder: external rotation: unable).

While respondent correctly notes that some of petitioner's treating physicians attributed his left shoulder injury, in part, to diabetes, the petitioner's diagnosis of adhesive capsulitis and tendonitis are consistent with other SIRVA cases that have resulted in compensation. *See Tenneson v. Sec'y of Health & Human Servs.,* 16-1664V 2018 WL 6984554, (Fed. Cl. Spec. Mstr. Nov. 19, 2018) (*rev. denied* Mar. 18, 2019) and *Vinocur v. Sec'y of Health & Human Servs.,* 17-593V 2019 WL 1047779 (Fed. Cl. Spec. Mstr. Jan. 31, 2019). Common injuries associated with SIRVA cases are tendonitis, impingement syndrome, frozen shoulder syndrome and adhesive capsulitis. *See National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table,* 80 Fed. Reg. 45132, Notice of Proposed Rulemaking, July 29, 2015 (citing Atanasoff S, Ryan, et. al., *Shoulder injury related to vaccine administration (SIRVA)*, Vaccine 28(51):8049-8052). None of the treating physicians provided any greater detail as to how or why petitioner's shoulder injuries resulted from diabetes. Additionally, Dr. Obermeyer noted petitioner's diabetes was better controlled, yet petitioner continued to experience functional limitations in his left shoulder. Pet. Ex. 6 at 24.

It is true that a careful examination of the medical records reveals some problematic facts for petitioner to prosecute successfully. Respondent argues the evidence filed in this case establishes that petitioner's shoulder issues began prior to his vaccination and a careful pre-filing examination of the medical records would have established the claim was not feasible. Resp. Response at 8. It is easy to assess evidence after-the-fact and make a determination that the claim would not have been successful. However, even though such evidence looks weak in hindsight, it is enough to conclude that the case had *some* objective support for reasonable basis prior to filing. *Carrington v. Sec'y of Health & Human Servs.,* No. 17-786V, 2018 WL 6918853 at *6 (Fed. Cl. Spec. Mstr. Nov. 16, 2018).

The medical evidence does not, as respondent argues, clearly demonstrate a pre-existing shoulder injury or the lack of a significant aggravation of an existing injury. The medical records from 2013 up until after petitioner received the vaccine were silent on specific shoulder issues,

with the exception of the small note indicating petitioner had pain above 90 degree abduction in September 2014. *See* Pet. Ex. 4 at 2-43. Dr. Leverentz was treating petitioner for a variety of health issues prior to petitioner receiving the vaccine and it was only after he received the vaccine did "shoulder problem" get added to the reasons for visits. Pet. Ex. 4 at 46. As respondent concedes, the record establishes that petitioner sought increased treatment for his left shoulder after receiving the vaccine. Resp. Report at 7. Petitioner consistently maintained that his shoulder pain and functional issues began after receiving the vaccination. *See* Pet. Ex. 2 at 7; Pet. Ex. 4 at 50; and Pet. Ex. 9 at 40. The treating doctors' explanations regarding the petitioner's shoulder injury were not necessarily insurmountable obstacles to the claim's viability, but instead gave rise to factual disputes that would have needed to be resolved if litigation continued.

Respondent argues that "petitioner's success [to show reasonable basis] rises or falls on the strength of the objective evidence ultimately presented to support (or undermine) the claim." Resp. Report at 6. As Chief Special Master Dorsey articulated in *Johnsen,* respondent's continued effort to limit the reasonable basis inquiry to a solely evidence-based standard, as he has done so in this case, appears to be based on an overly broad reading of the Federal Circuit's decision in *Simmons. Johnsen* at *7 (Fed. Cl. Spec. Mstr. Jan. 17, 2018).

In *Simmons,* the Federal Circuit held that an impending statute of limitations deadline cannot be used to establish a reasonable basis for a claim which would otherwise not exist. *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017). The Federal Circuit upheld the Claims Court's reversal of the Special Master's awarding attorney's fees, which concluded that the Special Master misapplied the law because she based her findings of reasonable basis *solely* on counsel's need to file a petition before the statute of limitations tolled. More importantly, in *Simmons*, the Federal Circuit, reiterated its holding from *Cloer II*, that a petitioner who asserts an unsuccessful but non-frivolous limitations claim should be eligible for a determination of whether reasonable attorneys' fees and costs….should be awarded. *Id.* at 636. (citing *Cloer v. Sec'y of Health & Human Servs.,* 675 F.3d 1358 (Fed.Circ. 2012) (en banc) ("*Cloer II")*).

In *Simmons*, petitioner's counsel filed a petition shortly before the statute of limitations expired without any medical records or supporting evidence. *Id.* at 634. Petitioner had disappeared once before, but when he returned indicating he wanted to pursue his claim, counsel wanted to preserve his right of action before the statute of limitations expired and filed the petition without any supporting documentation. *Id.* The petitioner only provided counsel a "vaccination receipt," but then disappeared a second time before providing any medical records to counsel to support petitioner's assertion of a GBS diagnosis. *Id.* The claim was dismissed for failure to prosecute when counsel was unable to acquire petitioner's medical records. *Id.* The Claims Court reversed the Special Master's decision, which was affirmed by the Federal Circuit.

In the instant case, there is more than adequate evidence to support reasonable basis for filing the claim. Counsel filed the claim with medical records and supporting documentation establishing that petitioner received the vaccination and afterwards received ongoing treatment for a shoulder injury and adhesive capsulitis, which had not been part of his prior medical treatment history. Petitioner was responsive to concerns raised during status conferences and continued to make filings as the case progressed. *See* Scheduling Order issued on May 4, 2016 (ECF No. 8);

Scheduling Order issued on Aug. 26, 2016 (ECF No. 14); Scheduling Order issued on Jan. 12, 2018 (requiring petitioner to file additional medical records) (ECF No. 38) and Scheduling Order issued on Aug. 14, 2018 (requiring petitioner to file a status report indicating his position) (ECF No. 48). Once it was made more apparent through respondent's filings that this case would have been difficult for petitioner to prevail, the case was appropriately dismissed.

A reasonable basis inquiry is not whether the claim is successful, but rather, if the claim is feasible and it is supported by objective evidence. Reasonable basis existed at the time petitioner filed his claim through the dismissal.

## IV. Calculation of Fees Award

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

An attorney's reasonable hourly rate is determined by the forum rate which bases the hourly rate on the forum in which the location of the deciding court sits (Washington, D.C.). *See Avera,* 515 F.3d at 1353. *McCulloch* established the hourly rate ranges for attorneys of different

levels of experience who are entitled to the forum rate. *McCulloch v. Sec'y of Health & Human Servs.,* No.09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Attorneys are generally entitled to forum rates, except when an attorney's work was not performed in the forum and there are very significant differences in the rates. *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F. 3d 755, 758 (D.C. Cir. 1999)).

Petitioner requests the following rates of compensation for work performed by his attorney, Mr. Muller: $255.00 per hour for work performed in 2015, $275.00 per hour for work performed in 2016, $300.00 per hour for work performed in 2017, $317.00 per hour for work performed in 2018 and 2019. Pet. App. 5-15. Petitioner also requests that paralegals who worked on this case be compensated at $125.00 per hour for work performed from 2015-2017, at $150.00 per hour for work performed in 2018 and none in 2019. *Id.* Mr. Muller practices in the Philadelphia, Pennsylvania metropolitan area and has been previously awarded forum rates requested for the years 2015 through 2019 in Vaccine Program cases by the undersigned and other Special Masters. *See, .e.g.*, *Curry v. Sec'y of Health & Human Servs.*, No. 16-68V, 2018 WL 3991228, at *1 (Fed. Cl. Spec. Mstr. Jul. 10, 2018); *Lee v. Sec'y of Health & Human Servs.*, No. 15-823V, 2018 WL 4403970, at *1 (Fed. Cl. Spec. Mstr. Aug. 22, 2018); and *Crowding v. Sec'y of Health & Human Servs.,* No. 16-876, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019). The rates requested herein are the same as those awarded to counsel in the above-cited decisions, and I will reimburse counsel at the rates requested without reduction.

Additionally, the hourly rate requested for the work performed from 2015 through 2019 is consistent with Attorney's Forum Hourly Rate Fee Schedule.[5] Accordingly, no adjustment to the requested rates is necessary.

Here, counsel's billing records provide the date, detailed description(s) of the task(s) performed, the requested rate, and time expended. Paralegal tasks such as preparing documents for filing are appropriately billed at a paralegal rate. There do not appear to be entries for non-compensable administrative tasks. Therefore, consistent with my reasoning above, I will compensate work expended through the requested date.

Additionally, counsel requested costs associated with obtaining medical records, filing the petition and mailing the orders to show cause and the dismissal decision to petitioner via certified mail. Pet. App. at 1, Ex. B. These are reasonable and well documented. I find no reason to adjust them. Thus, they will be awarded in full.

### V. Conclusion

In accordance with the foregoing, petitioner's application for attorneys' fees and costs is **GRANTED.** I award a total of **$21,211.63** (representing $20,159.20 in attorneys' fees, plus $1,052.43 in costs) as a lump sum payment in the form of a check payable to Petitioner's counsel,

---

[5] United States Court of Federal Claims – OSM Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.cofc.uscourts.gov/node/2914.

Maximillian J. Muller, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[6]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[6] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).